We'll hear the next case, United States v. Samuel Israel III, 20-3461. Good morning, Mr. Cummings-Young. Yes, good morning. I understand you are reserving one minute for rebuttal. You may proceed. That's correct. May it please the Court, my name is Karloff Cummings-Young, and I represent Mr. Samuel Israel in this matter. Only if the BOP could not care for defendant would I consider a compassionate release motion. The BOP is in the best position to determine whether Israel's medical condition, now that he has contracted COVID-19, has changed such that Israel can no longer provide self-care within the environment of a correctional facility. That's the statement issued by the district court with respect to Mr. Israel's motion for compassionate release in September 2020. Yet just a month prior to this, in August 2020, with respect to Ms. Janine Good, the same district court stated that the abominable COVID-19 statistics at FMC Carswell suggest that the trust this court once placed in the BOP to care for an inmate with Good's complicated health conditions is no longer warranted. When viewed now in the context of COVID-19, it can no longer be argued that Good's medical condition does not present an extraordinary and compelling basis warranting her release. Moreover, it would be laughable now to argue that Good would be safe in a Texas BOP medical facility. The reason, the prime reason given by the district court in each case with respect to its ultimate decision was the trust, or lack thereof, placed in the BOP. The district court in this case abdicated its discretion to the BOP, an agency that Just the fact that a court listens to a BOP is not a statement that they are bound by what the BOP did. Otherwise, if they couldn't listen and pay attention to the BOP, why would we ever have this requirement that it be brought to the BOP? And if a BOP doesn't answer, then you can go to court. That suggests that courts are supposed to look at that, though, as I wrote in a recent opinion, they're not bound by it. That's correct. Courts are supposed to look at what the BOP says. Courts are supposed to listen to what the BOP has to say. But the courts are not bound by what the BOP says. And in this particular case, the statement by the district court, only if, only if the BOP could not care for defendant. But that's different from saying I am powerless to release this defendant unless the BOP says. What I read or to say is I am exercising my discretion not to do so unless I hear from the BOP. It's different, right? To say I choose to rely on the BOP's analysis is different from saying I have no choice but to rely on the BOP's analysis. Isn't that different? I would argue that in this context, Your Honor, it's not different. I believe that what the district court was saying was that the decision with respect to this. But the very fact that you tell us that the same judge in another case said I won't listen to the BOP suggests that the judge knew perfectly well what it could do and when it chose to pay attention and when it chose not to. But to that point, Your Honor, the court chose, the court explicitly stated in one case that the district court trusts the decision of the BOP, trusts the. Knowing Judge McMahon, do you really think she was abdicating her authority to the BOP? I believe that in this particular context, Your Honor, that the discretion was abdicated to the BOP based on the statements made by the district court. Isn't it, one way to read her decision, isn't one way to read it that she thought that the severity of the crime committed by the defendant here was so extraordinary, so far beyond the vast majority of cases that she had encountered, that she was going to require an even higher showing of medical need before she was willing to exercise her discretion? I mean, isn't that a fair reading? I mean, she goes on a great length about the severity here. And that's something we've said that a court is allowed to look at, right, the 3553A factors, which include all the facts about the offense, right? I mean, that's a fair type of analysis, correct? That's one way to look at it, Your Honor, and that is a fair type of analysis. In this case, however, when looking at – well, let me just take a step back. With respect to what each defendant was convicted of in this case, Ms. Good was a career offender who was convicted of a drug crime, specifically oxycodone. And in district courts across the country, judges opine, government attorneys opine about the destruction that opioids have wrought in our society. Well, we really can't compare. I mean, we don't have all the facts of her case before us, right? We can't. I mean, otherwise, we'd have to get a big spreadsheet of every defendant who's asked for compassionate release and then engage in some sort of comparative analysis of every single defendant. That's not how we operate, right? We're just looking at the analysis here. So I'm not sure how helpful it is to cherry-pick one defendant because I bet the government could cherry-pick a few other defendants who were denied compassionate release, right? And say they were far more sympathetic candidates for compassionate release, and yet they were denied. So I don't know how much picking one random defendant is helpful to our analysis, right? No, I understand. My mentioning it was simply to compare the, quote, unquote, enormity of the crime. In the end, we have to read what Judge McMahon said and decide whether what she said indicated that she was bound by the BOP, in which case that was error, or whether we read it simply that in this case she chose to follow the BOP, in which case it wasn't. And that's our job, and we'll have to sit down and do that. Understood, and I would just comment that I believe that the way that the district court phrased the decision, phrased the statement with respect to its trust in the BOP in one case as opposed to the other indicates to counsel that the district court abdicated its decision-making ability to the BOP in that case. My time is up. You've reserved a minute for rebuttal. You could use it now if you'd like, or you could hold it for rebuttal. I'll hold it. Okay. Thank you, counsel. We'll hear from the government. Mr. McKay? May it please the Court. My name is Thomas McKay. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal. And I'd like to pick up by answering the question that Judge Nardini had posed, which I believe was something along the lines of, isn't one way to read the district court's decision that the severity of the crime is so extreme that Judge McMahon is going to require an even higher showing of medical need in order to grant compassionate release? And I think the answer to that question is yes. If you read Judge McMahon's multiple written, carefully reasoned opinions, I think it is clear that Judge McMahon's decision was driven by her application of the Section 3553A factors, in particular the severity of the crime, and not any deference to BOP program statements or guidance or the like. And that's critical because even after the Court's decision in Brooker, this Court has repeatedly affirmed district court decisions that were grounded in the Section 3553A factors, even if there was some ambiguity in the record as to whether the district court… But you're not suggesting it was error to give deference to the BOP, are you? No. Not at all. Okay. You said something which suggested that. I didn't. I thought it was going further than you wanted it to go. If I did, I apologize, Your Honor. My point is Judge McMahon was certainly entitled to consider and give her some measure of respect or deference to what the BOP had said about his medical condition. But ultimately, obviously, in light of Brooker, she is not bound to consider only the BOP program statement or the guidelines provision. And here, the record is crystal clear, and there's several points in the record that I can point the Court to, that Judge McMahon is carefully considering the medical condition and what the BOP says about that. But in her words, of greater importance than the medical condition are the 3553A factors. That's at A164. If you look at the third compassionate release decision, the one that's the subject of the instant appeal, at 563 and 564 of the record, the header is the sentencing factors still counsel against release. She goes on to apply the 3553A factors at length as she had in her earlier decision. So for those reasons, we think that her decision to deny compassionate release was not an abuse of her substantial discretion, and you should affirm on that basis. Thank you, counsel. Thank you, Your Honor. We will hear from Mr. Comision. You have one minute in rebuttal. It's the word only. That's the clincher here for counsel. It's the word only. Only if the BOP could not care for the defendant would I consider a compassionate release motion. When you look at that language in the context of calling the situation within the BOP laughable and saying that the BOP is not worthy of the court's trust, to me, in that particular instance, it's clear that the district court's abdicated, in this case, abdicated its considerable discretion to the BOP. And I just want to briefly address the exhaustion of administrative remedies. The government suggests that because Mr. Israel contracted COVID between the BOP's denial and the filing of our motion that Mr. Israel is required to now go back to the BOP and file a new request, well, medical situations are constantly changing, are constantly moving, and additional factors always arise with respect to health issues, and district courts have to be practical. And I don't think that it's practical to require an individual to go back to the BOP in a situation like that and file a new request. Thank you. Thank you very much, counsel. Thank you. We will take the case under advisement.